THE PEOPLE *ex rel.* BRISTOW *vs.* SUPERVISORS OF MACOMB CO.

When the board of health of a township necessarily incurs expenses in providing for the safety of its inhabitants, by removing, &c., any person infected with the small pox, or other sickness dangerous to the public health, such person, his parents, or other persons liable for his support, being unable to pay them, said expenses are a charge against the county, which it is the duty of the Board of Supervisors to allow.

The only effect of sec. 10, art. 10, of the Revised Constitution, is to abrogate the right of appeal from the decision of a Board of Supervisors, which before existed by law.   A mandamus will, notwithstanding that provision, lie to compel them to do what the law unconditionally requires of them.

The writ of mandamus, although generally used to enforce the performance of public rights or duties, may also be resorted to for the enforcement of private rights, when withheld by public officers, and especially in that class of cases where by law no other specific remedy is given.

This was an application for a peremptory mandamus, to compel the Board of Supervisors of the County of Macomb, to allow the relator the amount of a certain claim.

By the evidence submitted to the Court in support of the

application, it appeared that one Anna Craton, a resident of the village of Mt. Clemens, in said county, was in the month of April 1853, seized with the small pox, and removed by order of the Board of Health of said village, into the dwelling house of the relator, where he, under the employ of said Board of Health, nursed and took care of her for the period of twenty-six days; procured her necessary washing to be done, and made one journey to the city of Detroit; that these services were adjusted and fixed by said Board of Health, at fifty-six dollars, and that neither the said Anna, her parents, or any other person liable for her support, were able to pay the same. That the relator presented this claim as adjusted and fixed by said Board of Health, to the Board of Supervisors of the said County of Macomb, at their annual meeting held in October of that year, for allowance, by whom it was at once rejected; said Board refusing even to hear any proof of the fact in support of the claim.

On application at the last January term of the Court, an order was granted requiring said Board of Supervisors to show cause, if any they had, why a *peremptory mandamus* should not issue against them, &c.

This order, together with copies of the affidavits, upon which the same was granted, were subsequently served on said Board, at which time they not only absolutely refused to acknowledge service, or to have any entry of the fact made upon their journal, but publicly announced that "the Supreme Court had nothing to do with them."

No cause having been shown by the Board, the Court, at the present term, was again moved for a peremptory mandamus.

*H. D. Terry*, for the relator.

There was no appearance for the respondents.

By the Court, PRATT, J.

The first question which this application for a mandamus presents for consideration, is whether the county of Macomb is liable for the claim of the relator.

The statute provides that "when any person from abroad, or residing in any town within the State, shall be infected with the small pox, or other sickness dangerous to the public health, the Board of Health shall make effectual provision, in the manner in which they shall judge best for the safety of the inhabitants, by removing such sick or infected person to a separate house, &c., and by providing nurses, and other assistance and necessaries, which shall be at the charge of the person, his parents, or other person liable for his support, if able, otherwise at the charge of the county." (*R. S.* 1846, *p.* 163, § 15.)

This is not only a very plain but a very just and salutary provision of law, which is binding alike upon Boards of Health, Supervisors, and Courts, and which should not only be respected but efficiently enforced.

The evidence submitted to the Court in support of this application, and which is not in any manner controverted, shows conclusively that the Board of Health necessarily incurred the expenses which constitute the claim in question, in the discharge of their official duty, under the provisions of the statute referred to; that the infected person was a resident of the county of Macomb, and that neither herself, her parents, nor any other person liable for her support, were able to pay these expenses; consequently, they became a legal charge to the county. The county being thus liable, it was the official duty of the Board of Supervisors of that county to receive and allow the claim.

This official duty was unconditionally imposed upon them by law, and in discharging it they could not exercise their own whim, or be governed by their own caprice in the matter. The expenses were incurred, adjusted and fixed by the Board of Health, under the statute, and on a claim of this

kind, it would be the duty of the Board of Supervisors to institute inquiry, and to hear proof touching the ability of the patient, or other person liable therefor, to pay them, and if found unable, then it would become their duty to allow the claim, and make provision for the payment of it. In this they would act in their executive capacity, which is the only legal capacity in which they could act in the discharge of this particular duty.

The only remaining question to be considered is, whether this Court has the power to compel the Board of Supervisors, by mandamus, to receive and allow the claim. If it has, then most unquestionably it is the duty of the Court to do so.

A mandamus is a writ of most extensive remedial nature, and often indispensable in the administration of justice, in both civil and criminal suits and proceedings, and it may be awarded to any inferior court, corporation, or person, requiring them to do some particular act or thing therein specified, which appertains to their office or duty, and which the Court awarding the writ, has previously determined to be consonant to right and justice. It is true that this writ is more generally used to enforce performance of public rights or duties; but it is nevertheless equally true, that it may also be used for the enforcement of private rights, when they are withheld by public officers; and especially may it be used for the enforcement of this class of rights, when no other specific legal remedy is given. In the case under consideration, no other specific remedy, by which the relator can enforce payment of his claim, has been provided by law. This Court, therefore, must be bound to award the writ, unless inhibited, as some seem to suppose, by the clause incorporated into the present revised Constitution, and which provides that "the Board of Supervisors, or, in the county of Wayne, the Board of County Auditors, shall have the exclusive power to prescribe and fix the compensation for ser-

vices rendered for, and to adjust all claims against their respective counties ; and the sum so fixed, or defined, shall be subject to no appeal." (*Revised Constitution, art.* 10, *sec.* 10.) The primary object of this provision of the Constitution, must be apparent. It was to take away and entirely abrogate the right of appeal from decisions made by Boards of Supervisors, in fixing compensation and adjusting claims, which, before the revision of the Constitution, existed by law. This is the legitimate and only legal effect of the provision. The language employed in it, when fairly analyzed, and considered in connection with the prior right of appeal and the still existing law, will bear no other rational construction.

That the right of appeal is, by this constitutional provision, taken away and entirely abrogated, is beyond all controversy. But it is not, therefore, to be presumed, that the framers of the Constitution intended thereby to confer upon the Board of Supervisors absolute despotic power—to place them entirely above and beyond the reach of all legal control or restraint, touching their official acts, the discharge of their official duties, unconditionally imposed upon them by existing laws, and to leave all of those who may have just and honest claims against counties, without any legal remedy. At any rate, the mere abrogation of the right of appeal by the Constitution, raises no such legal presumption, nor does it authorize the construction which the Board of Supervisors of the county of Macomb assumes to claim, that this Court has no supervisory power over their official acts.

The Sheriff, Prosecuting Attorney, County Clerk, and County Treasurer, all render services to the County, for which they receive no fees, and for which no compensation is fixed by law, but which the Supervisors are required, by statute, to prescribe and fix. In discharging this official duty, they are required to act fairly—to exercise their best judgment, and allow a reasonable compensation for the services rendered.

When, in such a case, they have, in this manner, discharged their official duty, their decision, under the present revised Constitution, is final and conclusive upon the claimant. But if the Board of Supervisors, instead of prescribing and fixing a reasonable compensation, as the statute requires, should peremptorily refuse to receive or act upon the claim at all, or should allow such sum only as would furnish evidence of dishonesty and a palpable abuse of their official power, clearly they could not, in the eye of the law, justify their official conduct; they would not have prescribed and fixed a reasonable compensation for the services rendered; they would not have exercised their best judgment, under their discretionary power, which was conferred upon them for that purpose; and they would not, therefore, have honestly and faithfully discharged their official duty in the matter, but would have acted wantonly and unjustly, to the prejudice and injury of the claimant.

Then, again, they are required by law, and as an imperative official duty, to adjust all claims against the county. But who will contend that an arbitrary rejection by them of an honest and just claim, constitutes, in contemplation of law, an adjustment of it, or that they could justify such rejection upon that or any other ground. There are always a greater or less number of claims against every county, presented by Justices of the Peace and ministerial officers, for services rendered the county, in the prosecution of criminal causes, and in which specific fees are prescribed and fixed by statute. In this class of claims, all the Supervisors can do, by way of adjusting them, is to see that the services have been actually rendered, and that the fees charged are in accordance with the fees established by law, for such services. If in any case they should willfully reject the entire claim, or should, as they sometimes do, without investigation as to the services having been rendered, or the fees charged being in accordance with the fees allowed by law, determine

by vote, to allow the claimant only one-half of his claim, most certainly they could not justify themselves in such action. It would not constitute, either in legal or common parlance, an adjustment of the claim; nor could they be considered by such action, as having, honestly exercised their official judgment in the matter. On the contrary, their action would clearly be illegal, arbitrary, and manifestly unjust; and would constitute an absolute and palpable abuse of their official power.

If, in these and the like cases, Boards of Supervisors cannot be reached, and compelled, by mandamus, to perform their official duty, and especially such duty as is expressly and unconditionally imposed upon them by statute, then truly they are invested with arbitrary, despotic power, and honest claimants left entirely remediless; for the law in such cases has provided no other remedy for the enforcement of their claims. But this cannot be; nor is the law so entirely defective, or so absolutely arbitrary and unjust. A mandamus will lie in such cases, and is the legal and appropriate remedy; the law having provided no other.

In the case under consideration, there is no ground for even a doubt to rest upon. Not only a clear, but a very strong case, for the allowance of a peremptory mandamus, is presented. The claim of the relator is a just and legal charge against the county of Macomb, and one which should have been long since allowed by the Supervisors, and paid by the county; and there is no ground upon which the Supervisors can, as a Board, justify their extraordinary course in relation to it. Their summary rejection of the claim, without investigation, or even reference to the statute, and their peremptory refusal to hear proof of the facts, evinced great disregard on their part, for the rights of others, as well as an inexcusable indifference, touching the discharge of their own official duty; and their conduct in connection with their public annunciation, at the time of service of the order of this

61

Court upon them, to show cause, &c., was, in its nature, contemptuous towards the Court, and not calculated to reflect much credit upon themselves as an official body, invested with important powers and duties.

The application must be granted, with the costs of application.