HERMAN ELLIOTT v. KALKASKA SUPERVISORS.

ALFRED PAQUETTE v. SAME.

GEORGE TRENCHALL v. SAME.

*Small-pox—Expense of nursing.*

The authority of a township board of health to guard against small-pox (How. Stat. § 1647), extends to making contracts for the nursing of patients and to destroying infected clothing, And when they have allowed the accounts for such services rendered and property destroyed, the Board of Supervisors must pass such accounts, and can be compelled by mandamus to do so; they cannot refuse on the ground that the patients were themselves able to pay, or that sundry tax-payers considered the charges extortionate.

Mandamus. Submitted Nov. 10. Granted Nov. 18.

*McIntyre & Dunham* for relators.

*Perkins & Ellis* for respondents.

CAMPBELL, J. Each of these relators presented claims allowed by the proper board of health, for services and other dues incurred under their duty to take measures to prevent the spread of small-pox. The supervisors allowed more or less of the accounts, but refused to allow the rest. In their answers they present various supposed excuses for the disallowance. None of them are such as they could lawfully rely upon.

Mr. Elliott's claim is for services as nurse in the pest-house, at four dollars a day,—allowed by the supervisors at

two dollars.   There is a showing made, but contradicted, that the board of supervisors desired to have claimant given a fair chance for a full hearing.   The objections which are shadowed forth are that some of the patients were probably able to pay for their own necessities, and that the charge was exorbitant.   There is nothing whatever in the return to indicate that they had any evidence of such pecuniary ability, or that the charges were excessive.   Instead of having an open and proper hearing in relator's presence and where he could be represented, the return shows they sent out a committee to make such private explorations as they saw fit, who reported the views of some large tax-payers on the subject.   It is not remarkable that tax-payers should be desirous of evading county charges, but it would be contrary to good sense, as well as law, to allow a public body having legal responsibilities to attempt to shift them off by resting on the advice or wishes of those who have no such duties.

In this case it could make no difference what patients were in the pest-house.   Relator Elliott was employed to act as a nurse there, and it in no way concerned him what was the pecuniary standing of its inmates.   The board of health have the power and responsibility of providing such a house and nurses to attend it.   It was held in *Rae v. Flint* 51 Mich. 526, that the public is primarily responsible for such expenditures, and that it would be contrary to public policy to endanger the public health by making it impracticable to employ help who would not be sure of their pay.   The exigency of a pestilence will not wait for the convenience of parties, and measures must be prompt and effectual.   The board of health must have power to make necessary contracts, and this involves all their terms.   This was decided in the early case of *Bristow v. Supervisors of Macomb County* 3 Mich. 475.   There was nothing in Elliott's claim which was open to inquiry before the supervisors, and they should have allowed it as presented.   There is no possible issue left open.

Trenchall's claim was for care of certain small-pox patients under employment from the board of health, and for articles

destroyed to avoid infection. These items were within the discretion of that board under How. Stat. 1647, §§ 1648. The destruction of the infected property used in the care of the sick is so plain a necessity as to need no discussion. The return of defendants on this case is much like that in Elliott's case, and gives no reason for deferring action in ordering payment.

Paquette's case is not distinguishable in principle from Elliott's.

It is very much to be regretted that respondents have been so ill advised as to attempt to avoid the payment of these claims. The statutes designed to protect the community from infection are of the utmost importance, and persons cannot be compelled to risk their lives to take charge of patients, unless they choose to do so. Suitable and competent persons cannot be procured without fair remuneration. It would be dangerous in the extreme if such matters could be left open to the caprice of any public body, after the immediate danger is ended, where notions of thrift may interfere with those of humanity. The law has not left these matters open to any such risk, and it is the duty of courts to see that it is not disregarded.

The writs must all issue as prayed.

The other Justices concurred.