SAFFORD *v.* DETROIT BOARD OF HEALTH.

1. BOARDS OF HEALTH—INFECTIOUS DISEASES—QUARANTINE—COM-PENSATION.

Act No. 403, Local Acts 1893, prescribing the powers and duties of the board of health of the city of Detroit, provides: "In case of pestilence or epidemic disease, it shall be the duty of the board of health to take such measures, and to do and order and cause to be done such acts, for the preservation of the public health, as they may in good faith deem the public safety and health to demand." *Held*, that it was the duty of the board to award compensation for damages directly arising

110 MICH.—6.

from its action in using an hotel for an hospital during an epidemic of smallpox among the inmates, and in causing the destruction of infected property [1]

2. PUBLIC BOARDS—MANDAMUS.

Mandamus will lie to compel a public board to award compensation for damages resulting from its official action, where the duty to pass upon the amount of compensation is established, and it refuses to make any award.

3. APPEAL—WAIVER OF OBJECTIONS.

Where an issue is framed and a case is presented upon its merits, an objection to the regularity of the proceedings cannot be raised on appeal.

Certiorari to Wayne; Adams, J., presiding. Submitted April 22, 1896. Decided July 8, 1896.

Mandamus by Mason S. Safford to compel the board of health of the city of Detroit to award compensation for damages arising from the quarantining of relator's place of business. From an order granting the writ, respondent brings certiorari. Affirmed.

Fred A. Baker (George Gartner, of counsel), for relator.

John J. Speed and D. E. Heineman, for respondent.

MOORE, J. The respondent in this case asks for a review by certiorari of the proceedings had in the Wayne circuit court, in which respondent was compelled by mandamus to audit and allow a certain claim in favor of relator. Relator was the proprietor of the Merchants' Hotel, in the city of Detroit. June 1, 1894, Louisa Leonard, a servant in his employ, was taken ill. Her disease was pronounced measles by Dr. Cleland. As the young woman failed to improve, Safford telephoned the board of health that he feared the case was smallpox. In reply, one Goodson, contagious disease clerk at the health office, said: "It is all right; only a case of

---

[1] The especial powers and liabilities of municipalities in time of epidemics is the subject of a note to Thomas v. Mason, (W. Va.) 26 L. R. A. 727.

measles. Don't be alarmed. And it would be best for you to carry out Dr. Cleland's orders." June 6th the girl died. An investigation was made by the health department, and the case pronounced smallpox. The officers of the board of health immediately took possession of the Merchants' Hotel, and placed it in quarantine; confining therein 13 persons, several of whom were subsequently stricken with smallpox, and detained in the hotel, and there treated, by the board of health. The quarantine continued until June 29th. After this the board of health disinfected the premises, and destroyed a considerable portion of the furniture which had become infected. September 29th relator presented a claim to the board of health, asking for compensation for the use of the hotel as an hospital, for damaged and destroyed property, and for damage to his business through respondent's neglect to remove the patients to some other place for treatment, thereby causing him to lose his business. The entire amount of this claim, which was disallowed *in toto*, was $6,106.75.

Upon relator's petition, an order to show cause was granted. Respondent answered, and issue was framed thereupon by several pleas put in by relator to such answer. The fourth and fifth pleas set up new matter from that in the petition, in which the action of the board of health is rendered subject to criticism. These pleas aver that respondent was negligent in the Leonard case, and needlessly allowed several persons to become exposed, many of whom were subsequently stricken with smallpox, two dying; that, if Miss Leonard had been promptly removed, it would not have been necessary to quarantine the hotel; that, after the hotel was quarantined, no person was allowed to go in or out for a period of nine days; that relator, his wife, and 11 other persons were confined without any medical attendance whatever, and without any attention on the part of the board of health. The jury rendered a special verdict of direct damages for relator, and judgment was entered in the sum of $981.70, includ-

ing costs taxed at $90.20. Relator asked for a new trial, which was denied, and the case comes here, as previously stated.

The proceeding in the court below was a somewhat unusual one, but no objection was made by counsel for respondent to the manner of framing the issue, and the case was presented upon its merits; so that the objection to the irregularity of the proceedings, now raised for the first time, must be treated as waived.

For the purposes of this case, I think the verdict of the jury may, with much propriety, be treated as advisory to the court, inasmuch as he listened to all the testimony, and found, in his written opinion, the facts to be as stated by the jury. The claim of Mr. Safford for consequential damages was rejected. The amount of the judgment was for direct damages growing out of the action of the board of health in using the hotel for an hospital, the destruction of the infected property, and the burial of Miss Leonard, who died of smallpox. The question involved is whether, under the law and the facts, the respondent is liable? Its contention is that what was done by it was necessary, in the interest of the public welfare, and that the loss must be borne by Mr. Safford. It is the claim of the relator that the board of health of the city of Detroit stands in the same relation to the city that the township board of health does to the township, and that it has like duties and powers in cases of contagious diseases, and that the statute provides for compensation when property is occupied or destroyed to prevent the spread of such diseases.

Section 11, Act No. 403, Local Acts 1893, provides that—

"In case of pestilence or epidemic disease, * * * it shall be the duty of the board of health to take such measures, * * * and to do and order and cause to be done such acts, for the preservation of the public health, though not herein or elsewhere or otherwise authorized, as they may in good faith deem the public safety and health to demand."

The next section provides that the common council and board of estimates shall provide a fund for the maintenance of the board of health in performing the duties and obligations imposed by law on the board, and makes the city treasurer the treasurer of the health board. It is claimed that, whether or not the county of Wayne should eventually be liable to pay these expenses, the account must first be presented to, and acted upon by, the board of health, in order to fix the amount of the liability.

The general law confers upon township boards of health large powers in the treatment of contagious diseases. See 1 How. Stat. chap. 39. Section 1647 makes it incumbent on the board of health to make provision for the care of a sick or infected person "by providing nurses and other assistance and necessaries, which shall be at the charge of the person himself * * * if able, otherwise at the charge of the county to which he belongs." In construing this section, the courts have held that a city may make itself liable. *Rae* v. *City of Flint,* 51 Mich. 526. They have also held that a township may make itself liable. *Wilkinson* v. *Long Rapids Tp.,* 74 Mich. 63. It has also been held, in construing this section, "that the destruction of the infected property used in the care of the sick is so plain a necessity as to need no discussion." *Elliott* v. *Kalkaska County Supervisors,* 58 Mich. 452 (55 Am. Rep. 706). In the last-mentioned case, Justice Campbell said: "The exigency of a pestilence will not wait for the convenience of parties, and measures must be prompt and effectual. The board of health must have power to make necessary contracts, and this involves all their terms;" citing *People* v. *Supervisors of Macomb Co.,* 3 Mich. 475.

In the case at issue, it is clearly established that the relator acted in good faith, as did the board of health. We think it is within the contemplation of the law that, when property is used or destroyed or services rendered under such circumstances as in this case, compensation should follow. We also think it the duty of the board of

health to pass upon the question of the amount of compensation, and, where they refuse utterly to award compensation, that a writ of *mandamus* may be invoked to compel them to do so.

The judgment is affirmed, with costs.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.