McKILLOP v. BOARD OF SUPERVISORS OF CHEBOYGAN CO.

1. BOARDS OF SUPERVISORS—PAYMENT OF CLAIM—MANDAMUS.
   *Mandamus* is the proper remedy to compel a board of supervisors to pay the bill of a health officer, duly allowed and certified by the township board of health, for services rendered during an epidemic by direction of such township board.

2. SAME — SUPPRESSION OF EPIDEMIC — PHYSICIAN'S SERVICES — CONTRACT OF TOWNSHIP BOARD OF HEALTH.
   A board of supervisors has no authority to disallow a portion of a physician's charges, as allowed and certified by the board of health of a township, for services rendered under the direction of the latter board in time of epidemic, upon the ground that some of the persons to whom the services were rendered were financially able to pay for them.

*Certiorari* to Cheboygan; Adams, J. Submitted April 5, 1898. Decided April 19, 1898.

*Mandamus* by Archibald J. McKillop to compel the board of supervisors of Cheboygan county to allow a claim for services as health officer during an epidemic

of diphtheria.   From an order denying the writ, relator brings *certiorari*.   Reversed.

*Shepherd & Reilley*, for relator.

*H. W. Harpster* and *S. B. Roe*, for respondent.

Moore, J.   In 1894 an epidemic of diphtheria prevailed in the township of Nunda, Cheboygan county.   There were so many cases that the schools were closed, and prompt action became necessary.   The relator is a practicing physician.   An arrangement was made with him by the board of health of the township that he should take charge of the patients as physician and nurse, and bury the dead, if any; that supplies should be furnished through him; that he should quarantine the houses where there were cases of the disease, and take all necessary steps to check and control the disease.   There were between 30 and 40 cases, and a number of deaths.   The relator carried out the instructions of the board, and gave nearly all his time to the work.   In December, 1894, he presented a bill for his services, to the board of health, for $647, which was allowed and certified.   Later he presented a bill for $179.25, which bill was also allowed and certified.   These bills were afterwards presented to respondent.   The first one was allowed at $500, and the second one at $100.   The relator then filed a petition in the circuit court for a writ of *mandamus* to compel the respondent to pay all his bills as allowed by the township board of health.   An answer was filed, and a trial had before a jury.   Questions of fact were submitted to the jury, which, with their answers, were as follows:

"1. Was relator a regular practicing physician, duly qualified to practice under the laws of the State of Michigan?
"*Answer.* Yes.
"2. Did relator perform the services for which he presented his bill of account?
"*Answer.* Yes.

"3. In auditing relator's bill, did the board of health of the township of Nunda fraudulently combine with relator to allow same?

"*Answer.* No.

"4. Was relator a member of the board of health of the township of Nunda, and did he take part in auditing his own bills?

"*Answer.* No.

"5. In auditing relator's bill, did the board of health of the township of Nunda carefully consider same, and allow same at what they considered his services worth, and as a charge against the county of Cheboygan?

"*Answer.* Yes.

"6. Did relator protest against the allowance of his bills in part by the board of supervisors?

"*Answer.* Yes.

"7. Were the services rendered by the relator in the treatment of persons affected with a contagious disease and residing within the county of Cheboygan?

"*Answer.* Yes."

The answer stated that the portions of the bills not allowed were not allowed because some of the persons treated were able themselves to pay for treatment. As no issue was framed on this statement, the circuit judge held that it must be deemed to be true. The judge regarded the verdict of the jury as advisory simply, and denied the writ for two reasons: *First,* because *mandamus* was not the proper remedy; *second,* because services rendered to patients able to pay would not be a charge against the county,—basing his decision upon *Farnsworth* v. *Supervisors of Kalkaska Co.,* 56 Mich. 640.

As to the first reason, as early as the case of *People, ex rel. Bristow,* v. *Supervisors of Macomb Co.,* 3 Mich. 475, it was decided in this court that *mandamus* was the proper remedy in these cases, and from that time until now *mandamus* has been regarded as the proper remedy. *Farnsworth* v. *Supervisors of Kalkaska Co., supra; Elliott* v. *Supervisors of Kalkaska Co.,* 58 Mich. 452 (55 Am. Rep. 706); *Safford* v. *Detroit Board*

*of Health,* 110 Mich. 81; *Village of St. Johns* v *Supervisors of Clinton Co.,* 111 Mich. 609.

As to the second reason assigned for not issuing the writ· In *Farnsworth* v. *Supervisors of Kalkaska Co., supra,* part of the claim disallowed by the board of supervisors was for services rendered without any direction of the board. The other claim disallowed was for services rendered by a physician who was a member of the township board of health. There is language used in this opinion that tends to support the view taken by the trial judge of this case. But we think the later case of *Elliott* v. *Supervisors of Kalkaska Co., supra,* should control. In the last-named case the relator's claim was for services as nurse in a pest-house, at four dollars a day. The supervisors allowed two dollars, and claimed that some of the patients were able to pay for their own necessities, and that the charge was exorbitant. In disposing of the case, Justice Campbell used this language:

"Relator, Elliott, was employed to act as a nurse there, and it in no way concerned him what was the pecuniary standing of its inmates. The board of health have the power and responsibility of providing such a house and nurses to attend it. It was held in *Rae* v. *Mayor, etc., of Flint,* 51 Mich. 526, that the public is primarily responsible for such expenditures, and that it would be contrary to public policy to endanger the public health by making it impracticable to employ help who would be sure of their pay. The exigency of a pestilence will not wait for the convenience of parties, and measures must be prompt and effectual. The board of health must have power to make necessary contracts, and this involves all their terms. This was decided in the early case of *People, ex rel. Bristow,* v. *Supervisors of Macomb Co.,* 3 Mich, 475. There was nothing in Elliott's claim which was open to inquiry before the supervisors, and they should have allowed it as presented. There is no possible issue left open. * * * It is very much to be regretted that respondents have been so ill advised as to attempt to avoid the payment of these claims. The statutes designed to protect the community from infection are of the utmost importance, and persons cannot be compelled to risk their

lives to take charge of patients, unless they choose to do so. Suitable and competent persons cannot be procured without fair remuneration. It would be dangerous in the extreme if such matters could be left open to the caprice of any public body, after the immediate danger is ended, where notions of thrift may interfere with those of humanity The law has not left these matters open to any such risk, and it is the duty of courts to see that it is not disregarded."

In this case the record shows that the emergency was very great. The relator testified that in rendering the service he relied upon the promise made to him by the board of health that he should be paid what his services were reasonably worth, and would not have rendered the service if he had supposed he must look to the patients for his pay. His case comes directly within the reasoning employed in *Elliott* v. *Supervisors of Kalkaska Co.*, *supra*. If, in emergencies of this kind, it is understood that the agreements made by the boards of health cannot be enforced, the statutes designed to protect the community in these times, requiring prompt action of the board of health, will be rendered nugatory.

The writ will issue as prayed.

The other Justices concurred.