CHAPMAN v. BOARD OF SUPERVISORS OF MUSKEGON COUNTY.

1. PHYSICIANS AND SURGEONS —COUNTIES —BOARD OF HEALTH — CONTRACT FOR SERVICES.

Upon an appeal by a physician from the action of the board of supervisors of Muskegon county, disallowing his account for services rendered to indigent patients, it was not necessary, after the township board of health had determined by resolution that the patients were financially unable to pay, for plaintiff to establish by other evidence that such patients were indigent persons.

2. SAME—HEALTH—POOR LAWS—BOARD OF HEALTH—TOWNSHIPS —SUPERVISORS.

Where plaintiff, after calling on an indigent person, informed the supervisor of the township in which the patient resided of the situation, and the supervisor merely said he would present the physician's bill to the board of supervisors, and the physician proceeded to perform services for which he presented an account to the township board of health, and the board certified it to the board of supervisors, a finding of the trial court that there was a valid contract of employment between plaintiff and the board of health was supported by the evidence.

3. APPEAL AND ERROR—CONSTITUTIONAL LAW.

An appeal lies, under the Constitution and Act No. 58, Pub. Acts 1909, to the circuit court, from the action of the board of supervisors disallowing a physician's claim for services rendered prior to the passage of the act or adoption of the Constitution. Const., art. 8, § 9.

4. PHYSICIANS AND SURGEONS—HEALTH—CONTRACTS.

But such physician could not recover for services performed by another physician under claimant's direction and during claimant's absence.

5. SAME—QUASI CONTRACTS.

For medicines supplied by claimant, administered by the physician, recovery was warranted.

Error to Muskegon; Sessions, J. Submitted January 17, 1912. (Docket No. 113.) Decided March 12, 1912.

Vernon A. Chapman presented an account for services rendered to the board of supervisors of Muskegon county. The claim was disallowed. On appeal to the circuit court judgment for a part of the amount claimed was entered. Both parties appeal. Reversed.

*William Carpenter*, for plaintiff.

*Alex Sutherland*, Prosecuting Attorney, for defendant.

Plaintiff, a physician, rendered professional services to one Bessie Peterson, an alleged indigent resident of Fruitland township, Muskegon county. He also rendered like services to other children of John Peterson. The plaintiff's bill, rendered by him to the township, shows that the services were rendered between January 4, 1903, and March 22, 1905, the total value of which is placed at $354.40. The record shows that plaintiff started to attend Bessie Peterson some time before he claims to have been directed to care for her and other members of her family by the supervisor of Fruitland township. His talk with the supervisor occurred on March 11, 1903, and he personally continued to furnish medicine and make professional calls upon the young woman until October 4, 1903, when he removed to Chicago, having arranged with Dr. Smith to take care of Bessie Peterson for him. The account rendered includes charges from January 4, 1903, to March 11, 1903, as well as charges from October 4, 1903, to March 22, 1905, during which last-named period the services were rendered by Dr. Smith at the request of plaintiff and upon his account, though the medicines furnished during this period were plaintiff's medicines. An abortive attempt was made by plaintiff to collect this account from the township, after the board of health of the township had repudiated liability. Later, and in January, 1909, a new board of health having been elected in Fruitland township, plaintiff again presented his claim, and the following action was taken:

"FRUITLAND, MICHIGAN.
"January 8th, 1909.

"Board of health, Fruitland township, met at the clerk's office in said township on the above date for the purpose of taking such action as the law directs in reference to the medical attendance furnished and medicines supplied to one Bessie Peterson by Dr. V. A. Chapman during the years 1903 and 1905, and for the transaction of such other business as may lawfully come before the board. Board called in session by C. K. Bristol, supervisor, chairman. Present a full board. The bills of Dr. V. A. Chapman, one for professional service rendered to and medicines furnished for Bessie Peterson, and one of the same nature on account of the children of John Peterson, were taken up, considered and acted on as follows: Moved and seconded that it is the sense of this board that John Peterson was not at the time when these expenditures were incurred, financially able to pay them. Carried unanimously. Moved and seconded that the said bills be and they are hereby accepted and made an itemized statement of expenses (such as the board of health shall keep in such cases) incurred for Bessie Peterson and the children of John Peterson, they being indigent persons. Carried. Moved and seconded that said bills (or statements) be rendered to the board of supervisors of Muskegon county, Michigan, by filing the same with the county clerk of said county and that the same be certified by this board. Carried. The board did then adjourn.

"WM. JONES, Township Clerk.
"C. K. BRISTOL, Supervisor.
"————, Justice of the Peace.
"————, Justice of the Peace."

Thereupon the matter was presented to the board of supervisors for Muskegon county, which disallowed the claim without a hearing. Plaintiff then secured a writ of mandamus compelling the board at its next session to proceed to audit plaintiff's claim, and to allow and pay such amount as should be found after investigation and audit to be due plaintiff. In compliance with this writ a hearing was had and the account again disallowed *in toto*. An appeal was then taken from the decision of the board to the circuit court for the county of Muskegon, where the case was heard by the court without a jury, and a judgment

was rendered in favor of the plaintiff in the sum of $152.87.

The circuit judge made the following findings of fact and law:

"(1) The plaintiff, Vernon A. Chapman, is a regularly licensed and practicing physician, and was such in the year of 1903.

"(2) As such physician he rendered medical services and furnished medicines to the Peterson family, who resided in the township of Fruitland, in said county, from January 4, 1903, to March 22, 1905, and said medical services were rendered and medicines furnished to Bessie Peterson, a member of that family who was afflicted with tuberculosis of the bowels. That from March 11, 1903, to April 10, 1903, medical services were rendered and medicines furnished to four other children of the Peterson family who were sick with measles.

"(3) From January, 1903, to October 4, 1903, the medical services rendered and medicines furnished to this family were rendered and furnished personally by Dr. Chapman, plaintiff in this cause. About the 1st of October, 1903, Dr. Chapman removed from Whitehall to the city of Chicago, and remained away during the balance of the time Bessie Peterson was under treatment.

"(4) From October 4, 1903, to March 22, 1905, the medical services rendered were rendered by Dr. Smith of Whitehall, to whom Dr. Chapman had sold his practice.

"(5) The services rendered by Dr. Smith were rendered under an arrangement or agreement between him and Dr. Chapman and for Dr. Chapman. Dr. Smith refused to render the services for the township of Fruitland or for the public because of certain difficulties in other cases that he had with the township board of health.

"(6) By the agreement between Dr. Chapman and Dr. Smith, the latter was to take care of the case of Bessie Peterson, and Dr. Chapman was to pay him therefor. It is not clear whether or not Dr. Smith has ever been paid for the services he rendered. There is an open account between the two doctors that is still unsettled. All the medicines given by Dr. Smith to Bessie Peterson were furnished to him by Dr. Chapman.

"(7) Neither the township board of health of Fruitland township nor any member thereof had any information or knowledge of the arrangement between Dr. Smith and Dr. Chapman for the rendering of these services, and neither

said board of health nor any member thereof had any knowledge or information that Dr. Smith was rendering these services for Dr. Chapman, and that the public was expected to pay for the same.

"(8) On the 12th day of March, 1903, Dr. Chapman met the supervisor of the township of Fruitland, and informed him that he had been called in to the Peterson home the night before and found four of the children sick with the measles, that Bessie Peterson was sick with tuberculosis of the bowels, and that the case was a public charge, for which the county was liable.

"(9) Dr. Chapman informed the supervisor that he had been attending Bessie Peterson for some time, and that he had received pay for a portion of the services rendered, but that the family was poor and unable to pay him for further services, and that he would not render any further services or attend the family further unless he should receive his pay from the county.

"(10) The supervisor, Mr. Todd, then informed Dr. Chapman that, if he would go ahead and treat the patients, he, Todd, would present the bill to the board of supervisors of the county, and this was the only talk any member of the board of health of Fruitland township ever had with Dr. Chapman about attending the Petersons.

"(11) Dr. Chapman had no further or different agreement with the supervisor, Mr. Todd, and the township board of health of Fruitland, as a board, never had any talk with Dr. Chapman nor ever took any action directing him to treat any of the Peterson family, and, when Dr. Chapman presented his bill to the said board of health, it refused to pay the claim, or to have anything to do with it.

"(12) This claim was first presented to the board of supervisors of Muskegon county in 1905, and was rejected by the board because the bill was not certified by the local board of health of the township of Fruitland in the manner prescribed by law, and because the board determined, acting under the advice of the then prosecuting attorney, that tuberculosis of the bowels was not a dangerous and communicable disease, and that the county was not liable.

"(13) Thereafter Dr. Chapman brought a suit against the township of Fruitland to recover upon his claim, and he was defeated in that action in this court upon the ground that the township of Fruitland was not liable, and that, if any one was liable, it was the board of supervisors of Muskegon county.

" (14) The township board which constitutes the board of health of the township of Fruitland, which certified this account to the board of supervisors in January, 1909, had changed in personnel from the board in existence during the time the services were rendered.

"(15) The claim was again presented to the board of supervisors, properly certified by this township board, in 1909, and was again disallowed.

"(16) Subsequently Dr. Chapman applied to this court for a mandamus on the ground that his claim had been rejected by the board of supervisors without giving him a hearing, and this court, after hearing him, issued a writ of mandamus requiring the board to audit the claim.

"(17) Thereafter, and in January, 1911, Dr. Chapman had a full and fair hearing on his claim, and, after such hearing before the board of supervisors, it was again disallowed.

"(18) After the claim was last disallowed, Dr. Chapman took an appeal from that action of the board of supervisors to this court under the provisions of the Constitution of 1909 and the statutes of 1909.

"(19) The medicines furnished by Dr. Chapman to Dr. Smith for Bessie Peterson subsequent to October 4, 1903, and not included in charges for the visits of Dr. Smith, amounted to $64.75.

" On these facts the court reaches the following conclusions of law:

"(a) This court had jurisdiction, under the circumstances of the case, to hear and determine this appeal under the Constitution of 1909 and the statutes of 1909, though the obligation accrued before the adoption of the Constitution of 1909.

"(b) The State had a right to grant or to take away the right to sue itself or any of its agencies.

"(c) The local board of health in 1909, after the services had been performed and after the matter had been closed, and after the contract, if any existed, had been performed, could not conclusively bind the county of Muskegon to the payment of a sum of money by certifying the claim.

"(d) The effect of such certification was only to permit the claimant, Dr. Chapman, to properly present the claim to the board of supervisors, and have it audited and passed upon by that board.

"(e) The board of supervisors had a right to determine whether or not there was a legal contract of hiring made

between Dr. Chapman and the local board of health of Fruitland township.

"(*f*) This court, upon this appeal, has a right to determine whether or not a valid contract of hiring was made between the local board of health and Dr. Chapman.

"(*g*) There was a legal contract of hiring between Dr. Chapman and the local board of health which bound the board of supervisors of the county of Muskegon to pay to him the reasonable value of his services rendered and medicines furnished to the Peterson family from March 12, to October, 1903.

"(*h*) There was no legal contract of hiring between Dr. Chapman and the local board of health for the services rendered by Dr. Smith after October 4, 1903, nor for the services rendered by Dr. Chapman to Bessie Peterson prior to March 12, 1903.

"(*i*) Dr. Chapman is entitled to recover for his services rendered and medicines furnished from March 12, 1903, to October, 1903, being for services rendered to Bessie Peterson and the other Peterson children, amounting to $134.25, with interest at 5 per cent., which amounts to $18.62.

"(*j*) Dr. Chapman is not entitled to recover the balance of his claim.

"(*k*) The plaintiff, Vernon A. Chapman, is entitled to judgment in the sum of $152.87 damages, and his costs of suit, to be taxed in accordance with the statute."

From this judgment both parties appeal.

BROOKE, J. (*after stating the facts*). Defendant contends that there should have been no recovery for three reasons:

(1) It was not shown that Bessie Peterson was an indigent person.

(2) There was no evidence of a legal contract.

(3) The board of supervisors having disallowed the claim, their decision is final.

The first claim may be disposed of by noting that the health board of the township by resolution determined that at the time the services were rendered John Peterson was not financially able to pay for them. Moreover, this court has held that, in case of a legal employment, the pecuniary ability of the patient is not controlling. *Elliott*

*v. Kalkaska County Supervisors,* 58 Mich. 452 (25 N. W. 461, 55 Am. Rep. 706); *McKillop* v. *Cheboygan County Supervisors,* 116 Mich. 614 (74 N. W. 1050); *Township of Cedar Creek* v. *Wexford County Supervisors,* 135 Mich. 124 (97 N. W. 409); *Board of Supervisors of Arenac County* v. *Iosco County Supervisors,* 158 Mich. 344 (122 N. W. 629).

The second point made is ruled by the decision of this court in *Pierce* v. *Gladwin County Supervisors,* 136 Mich. 423 (99 N. W. 1132), against defendant's contention.

Will an appeal lie from the determination of the board of supervisors? It will be noted that the services, for which compensation is sought, were all rendered before the adoption of the Constitution of 1909. Section 9 of article 8 provides:

"Appeals may be taken from such decisions of the board of supervisors, or auditors, to the circuit court in such manner as shall be prescribed by law."

Section 2 of Act No. 58, Pub. Acts 1909, provides that:

"When the claim of any person, firm or corporation against a county shall be disallowed in whole or in part by the board of supervisors or board of county auditors, such person, firm or corporation may appeal from the decision of such board to the circuit court for the same county."

The language of this act is very broad. No intimation is there given that appeals will lie only in those cases where the claim arose subsequently to the passage of the act. The right given apparently covers every case of total or partial disallowance. It is, we think, clear that this statute confers no new rights, nor creates new liability. It affects the remedy only for a pre-existing right, and as such may be invoked in the enforcement of that right. *Heineman* v. *Schloss,* 83 Mich. 153 (47 N. W. 107). The circuit court had jurisdiction to entertain the appeal.

On behalf of the plaintiff the claim is made that the court erred in disallowing that portion of the claim repre-

sented by charges for the services rendered by Dr. Smith, and medicines administered during that period.

While we have held that this statute should receive a liberal construction in the interest of the public health (*Bishop* v. *Ottawa County Supervisors*, 140 Mich. 177 [103 N. W. 585]), we think it would be going too far to hold that a physician, having a contract of employment with a health board, might hire another physician to do the actual work, and himself collect for the service. It may well be supposed that the element of personal fitness enters into the contract. The board certainly is clothed with the power of selection, and the county should not be called upon to pay for the services of a physician with whom no contract was made. It seems equally plain that that portion of the bill represented by charges made by the plaintiff for services rendered by himself prior to the making of the contract was properly disallowed.

It is urged that in any event the circuit court should have allowed the plaintiff $64.75 in excess of the allowance made, that sum representing the value of the medicines furnished by plaintiff, though administered by Dr. Smith, during the period of Dr. Smith's attendance. The record conclusively shows that the medicines used were of an unusual character for an unusual disease, and that they were supplied by the plaintiff during the whole period of attendance. That the charges made therefor are reasonable is not in dispute. We can see no reason for denying plaintiff compensation for the medicines supplied by him under his contract, even though they were administered by the hand of another. This additional sum should have been allowed.

For the error pointed out, the judgment is reversed and a new trial ordered. Plaintiff will recover his costs to be taxed.

MOORE, C. J., and STEERE, McALVAY, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.