## CITY OF DETROIT v. GRUMMOND.

### (Circuit Court of Appeals, Sixth Circuit. July 25, 1914.)

### No. 2478.

1. MUNICIPAL CORPORATIONS (§ 1035*) — CONTRACTS — RENTAL OF VESSEL — EXECUTION — CITY'S LIABILITY.

In an action on a contract executed by defendant city, it was not sufficient to sustain the city's claim of nonliability thereon to show that the contract had been executed without authority, but it must be shown also that such execution had not been ratified.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2206; Dec. Dig. § 1035.*]

2. MUNICIPAL CORPORATIONS (§ 1036*)—CONTRACTS—RATIFICATION—QUESTION FOR JURY.

In an action against a city on a contract for the hiring of a vessel as a quarantine station, whether the contract had been executed without authority, and whether, if so, it had subsequently been ratified, *held* for the jury.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2207; Dec. Dig. § 1036.*]

3. APPEAL AND ERROR (§ 719*)—ASSIGNMENTS OF ERROR—NECESSITY.

Denial of a requested charge cannot be reviewed, unless error is assigned thereon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968-2982, 3490; Dec. Dig. § 719.*]

4. HEALTH (§ 16*) — BOARD OF HEALTH — CONTRACTS — RENTING VESSEL AS QUARANTINE STATION—CALLING FOR BIDS—COMPROMISE BY CITY COUNCIL.

Detroit City Charter, § 178, confers power on the city council to provide for the general health of the inhabitants, to make regulations to secure the same, to prevent the introduction or spread of contagious or infectious disease, and to suppress disease generally, and, if deemed necessary, to establish a board of health and prescribe and regulate its powers and duties. *Held* that, where it was deemed necessary to protect the city from a cholera epidemic, and for this purpose the city's board of health leased a steamboat to be used as an isolation hospital, the contract therefor was not void because it was not duly approved and confirmed by the city council, and there had been no previous calling for bids, as required with reference to ordinary contracts by sections 240 and 241; such sections not being applicable to contracts made under section 178.

[Ed. Note.—For other cases, see Health, Cent. Dig. §§ 13, 14; Dec. Dig. § 16.*]

5. COURTS (§ 352*)—FEDERAL COURTS—FOLLOWING STATE PRACTICE.

Where a motion is made to set aside a general verdict in a federal court, and to render judgment for defendant on special findings, the matter is to be determined by the common law, and not by the state statute.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 926-932; Dec. Dig. § 352.*

Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

In Error to the District Court of the United States for the Eastern District of Michigan; Alexis C. Angell, Judge.

---

Action by U. Grant Grummond against the City of Detroit. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 121 Fed. 963, 58 C. C. A. 301.

R. I. Lawson, of Detroit, Mich., for plaintiff in error.

H. H. Smith, of Detroit, Mich., for defendant in error.

Before DENISON, Circuit Judge, and COCHRAN and TUTTLE, District Judges.

COCHRAN, District Judge. This case is here, after the lapse of ten years, for the second time. At the former hearing a judgment in favor of defendant in error, plaintiff below, against the plaintiff in error, defendant below, for the sum of $16,366.66, entered upon a verdict of a jury, was reversed, with direction to award a new trial. The opinion was by Judge Severens, and is reported in 121 Fed. 963, 58 C. C. A. 301. It is assumed that the reader hereof has read that opinion and the recital of facts which precedes it. The new trial resulted in a verdict for plaintiff for the sum of $7,500, and it is from the judgment thereon that this writ was taken.

The first judgment was reversed on three grounds, to wit: The exclusion from evidence of the entry of September 8, 1892, in the record of the board of health; the direction to the jury to find for the plaintiff, which was based on the ground that the execution of the contract in suit, of date November 30, 1892, had been ratified by the city; and the charge as to the measure of damages. The admissibility of the entry was put upon the ground that it could reasonably be claimed that it evidenced another contract of letting of the boat than that one, to wit, a contract with Capt. Grummond, of the date of the entry, to which plaintiff succeeded as lessor upon the sale thereof to him, September 14th, which contract was void because of Capt. Grummond's membership in the board of health, under which, rather than it, the possession of the boat may have been taken and kept and the hire paid, in which case such action on the part of the city would not have been a ratification of the contract in suit. It was held that the uncertainty as to which contract that action was referable made the question of ratification thereof one for the jury and not for the court. It was assumed that the contract was executed without authority of the board of health, upon whom and the health officer power to act in the matter had been conferred by the resolution of the common council of September 2d, and that therefore the liability of the city thereon depended on whether it had ratified its execution on its behalf.

No such errors were committed on the new trial. The entry was admitted in evidence, the question of ratification was submitted to the jury, and the measure of damages given accorded with the ruling of this court. The assignments of error now relied on mainly complain of certain rulings, each of which negated the position taken by the defendant at and maintained by it all through the trial that, as a matter of law, plaintiff was not entitled to recover. They were the overruling of its objection to the admission in evidence of the contract in suit, the overruling of its motion at the close of all the evidence to direct a ver-

dict for it, and the refusal to give to the jury certain requests, in each of which they were charged that the plaintiff was not entitled to recover, to each of which rulings defendant duly excepted. The objection, motion, and special requests were each expressly based on the position that, as a matter of law, the execution of the contract was without authority; the several special requests differing only in the way in which the want of authority was put. The court submitted to the jury the questions of authority and ratification both, and charged them that the plaintiff was entitled to recover, if the execution of the contract had been either authorized or ratified by the city.

[1] It was not sufficient to sustain defendant in this position that the contract had been executed without authority. It was necessary also that its execution had not been ratified. Though unauthorized, it was binding if ratified. Such was the presupposition and concession of the decision on the former hearing, and see Hill v. Indianapolis (C. C.) 92 Fed. 467. And possibly it was not open to the lower court and is not now open to this court to hold that, as a matter of law, the contract had not been ratified. The ground of this is that on the former hearing it was held that the lower court had erred in holding that, as a matter of law, the contract had been ratified, and that the question of ratification was for the jury. But, apart from the question of the conclusiveness of the former decision that the question was for the jury, we see no reason for receding therefrom.

[2] The facts on the new trial differed in two particulars from those on the first and in other particulars were more definite. The more important of the two particulars in which they differed was as to the date of payment of the hire of the boat. Judge Severens had it that it was paid November 22d; i. e., eight days before the execution of the contract. It was in fact not paid until December 7th; i. e., seven days after its execution. The bill therefor was presented to the common council by the controller November 22d, and it was then referred to the committee on claims and accounts. It does not appear when it was allowed, but it was not paid until December 7th. The other particular of difference is this: Judge Severens had it that in the report of September 13th to the common council by the health officer it was stated that, "at another meeting held in the mayor's office, Controller Black stated that a boat could be procured for $5,000 for two years; the board to pay insurance on $12,-000." In the record before us no reference is made in the report to the matter of insurance. The particulars in which the case was more definite are these. The report of the committee on ways and means of the common council on the report of the health board of September 13th was made to that body and adopted by it September 20th. The possession of the boat was given to the city not "as early as September 14th"—probably not until after September 20th. The city, when it took possession, equipped it with disinfecting apparatus, new linen, and mattresses, and added some staterooms to her. The contract was executed in the city clerk's office, and the corporation counsel was consulted and advised as to how the contract was to be signed on behalf of the city, and wrote the words "City of Detroit by," "President of Board of Health," and "Health Officers" in the signature. Simultaneously with

the execution of the bill of sale of the boat by Capt. Grummond to the plaintiff (i. e., on September 14th), the former transferred certain insurance policies on the boat by indorsement on the policies, and these policies were delivered to the controller in October, before the 10th. The official who thus received notice of the transfer took a most active part in the transaction. He presented Capt. Grummond's proposition to the board of health; together with the health officer he was appointed by the board to look after the expenditures, the matter of which appointment was referred to in the report to the common council September 13th; he presented to the common council plaintiff's bill for the hire of the boat, and on December 7th paid it to plaintiff. On the assumption that the contract in suit was executed without authority, these particulars, in which the case at the new trial differed from and was more definite than that at the first trial, favored the position that the contract had been ratified.

But it cannot be said, as a matter of law, that the contract in suit was executed without authority. At the least that was a question for the jury, and the lower court was right in submitting it to them. By virtue of the resolution of the common council of September 2d and its adoption of the report of the committee on ways and means September 20th, the board of health, acting through its president, and the health officer had full authority to execute the contract in suit on behalf of the city. And, so far as the health officer was concerned, he needed no other authority than this. The only extent to which it can be said that it was executed without authority is in so far as it was executed on behalf of the city by the president of the board of health. In order for his act to have been with authority, it is essential that the board had theretofore authorized it. As heretofore stated on the former hearing in this court, it was assumed that the contract was executed without authority. The basis of this assumption was what it was taken that the entry of September 8th in the record of the board of health evidenced. It was taken that it evidenced a contract between Capt. Grummond and the board of health, between which and the contract in suit there was no connection. And, as there was no other direct evidence of action on the part of the board, that contract was unauthorized, so far as it was concerned. But this is not the only possible view to take of what that entry evidences. Construing it in the light of what subsequently happened, as may properly be done, it is possible to say that it evidenced an authorization of the execution of the contract in suit. The entry was not itself a contract between Capt. Grummond and the board. It was a minute of what took place at its meeting September 8th, and is quite informal in character. According to it, though Capt. Grummond was present as a member of the board, he did not then and there make any proposition. Seemingly he had theretofore made one, possibly to the controller, and this proposition was reported to the board by that officer.

The statement in the entry that it was moved and carried that the proposition be accepted need not mean more than an authorization to enter into a contract embodying the terms of the proposition. The board alone had no power under the resolution of the common council

of September 2d to make a contract. Joint action on its part and the part of the health officer was essential to that end, and, though the latter was secretary of the board and present at the meeting, it is not stated, nor is there any other direct evidence, that he then took any action. But, though the board alone had no power to make a contract, it was for it alone to determine whether, so far as it was concerned, it would make one. That it was regarded that a contract had not then been entered into and the matter was still open is indicated by the report of the action then taken to the common council September 13th, and the report thereon by the committee on ways and means, to whom it was referred, and the adoption of the latter report by the common council September 20th. Seemingly it was thought that further power than that theretofore granted was necessary in order to close a contract, or at least the approval of the common council was desired before one was closed.

If, however, the action of September 8th was not merely the authorization of a contract, as far as the board was concerned, but was the entering into an agreement with Capt. Grummond in relation to the boat, this does not exclude the fact that it was then understood that the agreement should be reduced to writing and a formal written contract entered into, and that the execution of such a contract was then authorized. It is most likely that there was such an understanding. In a matter of such consequence, the terms of the agreement would hardly be left to the witness of an informal entry and the recollection of those present. There is nothing in the entry negativing such an understanding. In either contingency, therefore, the action of September 8th called for the execution of a formal written contract. And it is open to claim that it called for the execution of the contract in suit. It is no stretch of the historical imagination to surmise that all concerned then knew that Capt. Grummond could not, by reason of his membership in the board, legally make a contract with the city; that this feature of the case was the subject of consideration at the meeting of September 8th; and that it was then understood that Capt. Grummond would sell the boat to the plaintiff, as he did within a week thereafter, and that the contract contemplated would thereafter be made with plaintiff and not with him. Beyond doubt, no formal written contract was made with Capt. Grummond; he sold his boat to plaintiff; and thereafter such a contract was made with the latter because of this legal difficulty, and for the purpose of obviating it. What more reasonable then than to infer that all this was in pursuance of what was understood should be done at the meeting of September 8th? Not otherwise can the execution of the contract in suit be accounted for. It was executed on behalf of the city by the president of the board of health and the health officer. It was executed in the city clerk's office. The city clerk attested it and affixed the seal of the city to it. The corporation counsel was consulted as to the manner of execution on behalf of the city and wrote the words in the signature heretofore stated.

Now how did all this come about? It calls for explanation. So far as the contract was executed on behalf of the city by the health officer, it needs no other explanation than the resolution of the common coun-

cil of September 2d. His action was within the authority then conferred upon him, and he needed no authorization on the part of the board of health, though seemingly according to his testimony, given many years after the event, he did not so understand the matter. But how as to the execution by the president of the board of health? To justify it, authorization on the part of that body was essential, and such authorization is not to be found elsewhere than at the meeting of September 8th. And, according to the testimony of the health officer, it was under that authority that the contract was executed both by the president of the board and himself. The silence of the entry on this subject and an inability to account therefor is not conclusive against this position. Possibly it was thought that the real nature of things would not be changed by this procedure, and it was naïvely supposed that the legal difficulty could thus readily be obviated. It may be urged that even on this view of the matter the contract in suit was not within the authorization of the board at the meeting of September 8th, because it is stated in the entry that the city was to "pay insurance on $12,000," whereas in the contract it was provided that the city should keep the boat insured. But it does not follow necessarily that such is the effect of this difference. It may be that the entry is incomplete in not showing that the city was to keep the boat insured. Its so doing would not be inconsistent with its paying the insurance. If it was to keep the boat insured, it had to pay the insurance. In the report of September 13th, no reference is made to the matter of insurance. On the other hand, immediately preceding the statement of the proposition as to the boat in question, which had been accepted, it is stated that an option had been obtained on another boat by which it was to be "returned in good condition," from which possibly the inference might have been drawn that such was a term of that proposition. The contract in suit provided that the city was to return the boat "in like condition as when taken, reasonable use and wear and tear excepted." This, of itself, made the city responsible for the loss without respect to the clause as to insurance. These considerations made it a question for the jury at least whether or not the execution of the contract had not been duly authorized. If the fact that the contract provided that the city should keep the boat insured rather than that it should pay for insurance on $12,000 removed the question of authority from the case, still it was for the jury to say whether the city, by taking and keeping possession of the boat and paying the $5,000, had not waived this departure from authority and thereby ratified the execution of the contract.

It may be thought that this view of things affects the legality of the contract in that it leaves it open to be claimed that the contract in reality was with Capt. Grummond and only in form with the plaintiff. We are not disposed to say that it does not, though there was evidence tending to show that the plaintiff gave full value for the boat, and that the sale was genuine and not a sham. But no such question is before us.

[3] The defendant made a request that the jury be charged that if Capt. Grummond "was interested in this contract, either directly or indirectly, there can be no recovery, because the statute would make such

a contract void," and the request was refused and an exception taken. But this ruling has not been assigned as error.

[4] Yet another ground is urged to support the contention that defendant was entitled to a directed verdict than want of authority on the part of those who executed the contract on behalf of the city to so do. It is want of authority in the common council to confer authority on the board of health and health officer to act as they did on behalf of the city. Reliance is had on sections 240 and 241 of the charter of the city, which provide as follows, to wit:

Section 240:

"No contract shall be let or entered into for the construction of any public work to be done, or for the purchase or furnishing of supplies for said city not hereinafter provided for, and no such public work, performance, purchasing or supplying shall be commenced until approved by the common council and until the contract therefor has been duly approved and confirmed by the council."

Section 241:

"No contract * * * for the purchase or furnishing of any material, printing or supplies for said corporation, if the purchase of said * * * materials or supplies shall exceed $200 shall be let or entered into except to and with the lowest bidder with adequate security."

It is claimed that the contract in suit is void because it was not duly approved and confirmed by the council, and there was no previous calling for bids. This question was in the case at the former hearing, but no mention is made of it in Judge Severens' opinion. It is stated by counsel for defendant in error that it was then urged on behalf of the city. If so, no mention was made of it, no doubt, because it was thought that there was nothing in it. By section 178 of the charter of the city power is conferred on the common council to "provide for the preservation of the general health of the inhabitants of said city; to make regulations to secure the same; to prevent the introduction or spread of contagious disease or infectious disease and suppress disease generally; and, if deemed necessary, to establish a board of health and prescribe and regulate its powers and duties." This provision is sweeping in its character. The following cases coming from the Supreme Court of Michigan have been cited by counsel for defendant in error as showing that a liberal construction has been put by that court on statutory provisions relating to the public health, to wit: Rae v. City of Flint, 51 Mich. 527, 16 N. W. 887; Elliott v. Supervisors, 58 Mich. 452, 25 N. W. 461, 55 Am. Rep. 706; Wilkinson v. Long Rapids, 74 Mich. 64, 41 N. W. 861; Cedar Creek Twp. v. Supervisors, 135 Mich. 124, 97 N. W. 409; Bishop v. Supervisors, 140 Mich. 177, 103 N. W. 585; Thomas v. Supervisors, 142 Mich. 319, 105 N. W. 771. In view of them we are of the opinion that sections 240 and 241 are not limitations upon section 178, and under the latter section the common council had full power to take the action it did. Judge Campbell in Elliott v. Supervisors, said:

"The exigency of a pestilence will not wait for the convenience of parties, and measures must be prompt and effectual."

For these reasons we hold that the assignments of error under consideration are not well taken. The fact is that, so far as the question of the contract being the city's contract is concerned, the case bordered very closely on being one where it would have been proper to decide as a matter of law that it was.

[5] Of the other assignments of error the only one urged in oral argument was one complaining of the action of the lower court in overruling its motion to set aside the general verdict and enter judgment for defendant upon certain findings. The matter is to be determined by the common law and not by the state statute. McElwee v. Metropolitan Lumber Co., 69 Fed. 302, 319, 16 C. C. A. 232. The result, however, would not be different if it were determined by the state statute. The basis of the motion was that the special findings were inconsistent with the general verdict. The special findings were as follows, to wit:

"Q. Did the board of health authorize its president and secretary to make a contract with U. Grant Grummond for the hiring of the boat Milton D. Ward? Ans. We think so, because it was afterwards ratified by the controller of the city of Detroit.

"Q. Was an agreement on behalf of the city for the hiring of the boat made with Capt. Grummond on the 8th day of September, 1892? Ans. Yes."

It is only claimed that the second special finding is inconsistent with the general verdict. But we can see no inconsistency between the two. Even if it be assumed that the meaning of the finding is that a contract was made with Capt. Grummond on September 8th, between which and the contract in suit there was no connection, there is no inconsistency. The jury could have so found, and yet found that the plaintiff was entitled to recover on the ground that the taking and keeping possession of the boat and payment of the hire were referable to the contract in suit and not to the earlier contract, and that thereby the city had ratified that contract. On the former hearing in this court it was held that on this assumption the city was liable if it had thus ratified the contract in suit, and that the question whether it had so done was for the jury. But such is not necessarily the meaning of the finding. As heretofore shown, it was open to the jury to find that there was an agreement then made with Capt. Grummond, and that it was a part of the agreement that it should be embodied in a formal written contract, and that such as the contract in suit, in which case there would have been a direct connection between that agreement and that contract. This assignment is not well taken.

The other assignments of error have been carefully considered and the conclusion reached that they are not well taken. It is not deemed important to make further reference to them.

Finding no error in the proceedings in the lower court, the judgment is affirmed.